IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ADA IRENE DAWSON, ) | C.A. No. 3:05-2308 CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | OPINION AND ORDER |
| ) | ON MOTION FOR |
| ) | SUMMARY JUDGMENT |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court for review of the Report and Recommendation ("Report") entered on January 25, 2008. For the reasons set forth below, the Report is adopted. Summary judgment will, therefore, be entered in Defendants' favor on all of Plaintiff's claims.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

## REPORT and OBJECTIONS

The Report recommends that Defendants' motion for summary judgment be granted in full, resulting in entry of judgment in Defendants' favor on all of Plaintiff's claims. Those claims are all asserted under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, and include claims for racial discrimination, a racially hostile work environment, and retaliation for filing a claim of discrimination.

Plaintiff filed timely objections to these recommendations asserting that, when viewed as a whole, the evidence is sufficient "to raise several disputed issues of fact." Dkt No. 59 at 2. She further contends that the evidence is sufficient to establish that Defendants' proffered reasons for her suspension and demotion[1] are pretextual and that she was subjected to a hostile work environment and retaliation for complaining about discriminatory treatment.

**FACTS**

In her "Statement of Facts and Procedural History," Plaintiff argues that the Report fails to view the evidence in the light most favorable to Plaintiff, the non-moving party, and, based on this error, reaches an incorrect conclusion. Plaintiff does not, however, direct the court to any specific facts which she contends are misstated in the Report. She focuses instead on the inferences to be drawn from the facts. The statement of facts as set forth in the Report (Dkt No. 57) at pages 2-14 is, therefore, adopted by the undersigned. The appropriateness of the inferences drawn from those facts is addressed below.

---

[1] The objections incorrectly and repeatedly refer to Plaintiff's "termination." *See* Dkt No. 59 at 2 & 3. Plaintiff was not, however, terminated. She was, instead, demoted from a GS 10 to a GS 6.

**DISCUSSION**

**I.      Pretext – Discrimination Claims**

In her first objection, Plaintiff challenges the recommendation that this court find the evidence insufficient to support a finding of pretext as to Defendants' stated reasons for its decisions regarding Plaintiff's employment. More specifically, Plaintiff asserts that the Report erred in finding a lack of pretext because it improperly considered only the reasons given for her suspension and demotion.

Plaintiff suggests that the poor reviews and written reprimands which she received in advance of her suspension and demotion should also have been considered as adverse employment actions because they *could have* adversely impacted the terms and conditions of her employment. She also relies on the United States Supreme Court's decision in *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, ___, 126 S. Ct. 2405, 2415 (2006), which she contends requires the court to consider any action which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Dkt No. 59 at 3 (quoting *Burlington Northern*).

Plaintiff's first objection fails because she has not directed the court to any evidence which would suggest that the terms of Plaintiff's employment were, in fact, adversely impacted directly by either the poor reviews or reprimands. At most, matters which led to the poor reviews and reprimands were *also* considered in the processes which led to Plaintiff's suspension and demotion. Thus, only the suspension and demotion were properly considered in Plaintiff's discrimination claim.

*Burlington Northern* does not support a different conclusion. Contrary to Plaintiff's suggestion, *Burlington Northern* does not eliminate the requirement for proof of an adverse

employment action in a Title VII *discrimination* action.   As the Court explained:

> There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well. The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. . . . The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.
>
> To secure the first objective, Congress did not need to prohibit anything other than employment-related discrimination. The substantive provision's basic objective of "equality of employment opportunities" and the elimination of practices that tend to bring about "stratified job environments," . . . would be achieved were all employment-related discrimination miraculously eliminated.
>
> But one cannot secure the second objective by focusing only upon employer actions and harm that concern employment and the workplace. Were all such actions and harms eliminated, the anti-retaliation provision's objective would not be achieved. An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace. . . . A provision limited to employment-related actions would not deter the many forms that effective retaliation can take.

*Burlington Northern,* 548 U.S. at ___, 126 S.Ct. at 2412 (internal citations omitted).   Thus, *Burlington Northern* would apply, if at all, only to Plaintiff's retaliation claim.

For reasons explained fully and correctly in the Report (Dkt No. 57 at 16-19), Plaintiff has not proffered sufficient proof of pretext as to the reasons on which Defendants relied for her demotion and suspension to allow her discrimination claims to proceed to trial.   Both of these adverse employment actions followed thorough investigations by the Office of Professional Responsibility (OPR) which, notably, decided against termination and, instead, demoted Plaintiff based on the founded allegations.

At most, Plaintiff has proffered evidence that OPR reached the wrong conclusion. She has not proffered evidence which would support the conclusion that OPR made its adverse employment decisions for any reasons other than its stated reasons or that those decisions were based on racial animus by OPR. Neither is there any evidence that OPR merely rubber stamped the decision of someone who was acting with such animus.[2]

## II.     Hostile Environment Claim

Plaintiff also challenges the recommendation that summary judgment be granted as to her hostile environment claim. She asserts that racial motivation is sufficiently supported "for the same reasons" articulated as to her discrimination claim. Dkt No. 59 at 9. She also argues that evidence that she was subjected to "long meetings in which [she was] demeaned and yelled at by an armed supervisor" and evidence that this supervisor (the Assistant Special Agent in Charge (ASAC)) once grabbed her arm to pull her aside to speak to her during a luncheon are sufficient to establish the severity element of a hostile environment claim. Dkt No. 59 at 10. The court disagrees for the reasons explained in the Report as summarized below.

---

[2] The only person who Plaintiff alleges acted out of racial animus was the Assistant Special Agent in Charge (ASAC). Plaintiff served as secretary to the Special Agent in Charge (SAC) who, she alleges, deferred to his subordinate, the ASAC, in regards to certain allegations against Plaintiff. These allegations include that Plaintiff referred to the ASAC in derogatory terms in a phone conversation conducted in the office. (Plaintiff conceded in a written statement that she "did use a few choice words" in describing the ASAC but asserts that she did not use the particular terms she is alleged to have used. She also argues that her Caucasian coworker, the ASAC's secretary, was not similarly disciplined for using profanity within the office. She does not, however, assert that the ASAC's secretary used profanity in referring to a superior.) Another specific event which led to the OPR investigation was reported by the SAC, not the ASAC, and involved Plaintiff's insubordination to the SAC. No facts support a reasonable inference that this report was instigated or encouraged by the ASAC, much less by any racial animus which he may have harbored.

5

First, while Plaintiff has presented evidence that she and the ASAC had an unpleasant relationship and that he may have treated her unnecessarily harshly, there is no evidence that his attitude toward Plaintiff was racially motivated. Plaintiff errs in assuming that she may rely on an "inference" of racial motivation arising from her discrimination claim because the only potential inference in that case arises, if at all, from her satisfaction of a claim-specific prima facie case. Plaintiff points to no authority which would allow the borrowing of such an inference from a discrimination claim to satisfy the motivation element of a harassment claim. In any event, the potential inference to be drawn from the discrimination claim is precluded by the absence of proof of pretext.

Second, the allegation regarding an armed supervisor is misleading. There is no suggestion that the ASAC ever referred to (or even wore) his weapon during any meeting with Plaintiff, much less that he brandished it or used it to threaten her. What little evidence has been presented supports only the conclusion that Plaintiff had a subjective fear based on the ASAC's ability, as an FBI agent and supervisor, to access a weapon.

Finally, Plaintiff fails to direct the court to evidence which would suggest that the single reported instance of physical contact by the ASAC was sufficiently severe to support a hostile environment claim. While Plaintiff notes that an independent witness reported that the ASAC grabbed Plaintiff's arm to pull her aside to speak to her at a luncheon, she fails to note that the same witness stated that the ASAC "wasn't rough or anything, just grabbed her by the arm and said excuse me . . . . I just remember them going away from us so they could have their conversation." Administrative Hearing Transcript at 185. Plaintiff did not, herself, testify that the ASAC grabbed her by the arm at the luncheon, only that he did call or take her aside and speak to her sufficiently

6

harshly to cause her to become upset.

For these reasons, the court does not find the objections to be well founded. The court, therefore, agrees with the recommendation that summary judgment be granted on the hostile environment claim.

### III.    Retaliation Claim

The court adopts the recommendation that it find that the retaliation claim was waived during the administrative proceedings. While the specific language placed on the record by Plaintiff's counsel might possibly be read more narrowly (to apply only to any claim of retaliation *following* her official contact with the Equal Employment Opportunity office), the failure to address retaliation in any subsequent part of the administrative process requires a broader interpretation (to apply to any claim of retaliation for her *earlier* indications that she intended to file such a claim).[3]

Even if the waiver were not effective as to all then-known claims, the court agrees that Plaintiff has not presented evidence that the individual alleged to have retaliated against her (the ASAC) had knowledge, at the time of any allegedly retaliatory action, that Plaintiff had filed or had announced an intent to file or otherwise assert a claim of racial discrimination. What evidence Plaintiff cites supports only the inferences that *other* supervisors were or may have been aware of her intent to file a discrimination claim, and that the ASAC was likely aware that Plaintiff had complained about his treatment of her. She cites no evidence which would support the conclusion that the ASAC was aware that Plaintiff had made or indicated an intent to make a complaint that the ASAC's mistreatment was based on racial animus. Thus, she has proffered no evidence to support the causation element of a retaliation claim.

---

[3] During Plaintiff's deposition, her attorney stipulated that the case was not "one that deals with reprisal following the filing of the formal complaint and her demotion, which generates the complaint that's in question." Plaintiff depo. 116-17.

7

## CONCLUSION

For the reasons set forth above, the Report and Recommendation is adopted and Defendants' motion for summary judgment is granted in full.

IT IS SO ORDERED.

                                                **s/ Cameron McGowan Currie**
                                                **CAMERON MCGOWAN CURRIE**
                                                **UNITED STATES DISTRICT JUDGE**

**Columbia, South Carolina**
**March 5, 2008**

C:\Documents and Settings\Glp59\Local Settings\Temp\notesE1EF34\05-2308 v2 Dawson v US adopt R&R - grant SJ.wpd